UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1734 JGB (KKx)** | Date | January 18, 2022 |
|---|---|---|---|
| Title | ***Brian K. McDermott, et al. v. FCA US LLC, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion to Remand (Dkt. No. 18); (2) GRANTING Plaintiffs' Request for Judicial Notice (Dkt. No. 19); and (3) VACATING the January 24, 2022 Hearing (IN CHAMBERS)

Before the Court are a motion to remand and request for judicial notice filed by Plaintiffs Brian K. McDermott and Roxanne M. McDermott ("McDermotts"). ("Motion," Dkt. No. 18; "RJN," Dkt. No. 19.) The Court finds these matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of the RJN and in support of and in opposition to the Motion, the Court GRANTS the RJN and GRANTS the Motion. The January 24, 2022 hearing is VACATED.

## I.  BACKGROUND

On March 22, 2021, the McDermotts filed a complaint against Defendants FCA US, LLC ("FCA"), Jeep Chrysler Dodge Ram Fiat of Ontario ("Jeep"), and Does 1 through 10 in the Superior Court of California for the County of San Bernardino ("Superior Court"). ("Complaint," Dkt. No. 1-2.) The Complaint arises from the McDermotts' August 21, 2018 purchase of a vehicle manufactured and/or distributed by FCA ("Vehicle"). (Id. ¶¶ 4, 5, 9.)

Initially, the Complaint alleged five claims against FCA and one claim against Jeep. (Id. ¶¶ 36–67.) On September 20, 2021, the Superior Court granted the McDermotts' request to dismiss Jeep without prejudice. ("Jeep Dismissal," NOR, Ex. B.) The remaining five causes of action against FCA allege three violations of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1792–1795.5; a breach of express written warranty in violation of Cal. Civ. Code §§ 1791.2(a), 1794; and fraud. (Compl. ¶¶ 36–54, 60–67.)

On October 14, 2021, FCA filed its notice of removal. ("NOR," Dkt. No. 1.) In support of the NOR, FCA filed the declaration of Sarah Carlson Lambert and numerous exhibits. ("Lambert Declaration," Dkt. No. 1-1.)

The McDermotts filed the Motion and RJN on December 13, 2021. (See Mot; RJN.) In support of the Motion, the McDermotts filed the declaration of Karin Kuemerle. ("Kuemerle Declaration," Dkt. No. 18-1.) FCA opposed on December 20, 2021. ("Opposition," Dkt. No. 21.) In support of the Opposition, FCA filed the declaration of Gurpreet Sandhu. ("Sandhu Declaration," Dkt. No. 21-1.) The McDermotts replied on December 27, 2021.[1] ("Reply," Dkt. No. 23.) As part of the Reply, the McDermotts filed evidentiary objections to the Sandhu Declaration. ("Plaintiffs' Evidentiary Objections," Dkt. No. 23-1.)

## II. LEGAL STANDARD

**A. Motion to Remand**

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson v. Specialized Loan Serv., LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014). Courts must resolve doubts regarding removability in favor of remanding the case to state court. Id.

Where an action is removed based on diversity, complete diversity must exist at the time of removal. Gould v. Mut. Life Ins. Co. of N.Y., 790 F.2d 769, 773 (9th Cir. 1986). Complete diversity means "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008). Moreover, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). In the Ninth Circuit, the amount in controversy is assessed at the time of removal. Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005). "Where it is not

---

[1] The Court reminds both parties that all documents filed with the Court must comply with the Local Rules of the Central District of California. In the Opposition and Reply, headings and quotations are not double-spaced, in violation of Local Rules 11-3.6 and 11-3.7. L.R. 11-3.6; L.R. 11-3.7. The Court warns the parties that failure to follow the Local Rules may result in sanctions. L.R. 11-9.

facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Though a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 82 (2014).

### III.  DISCUSSION

**A.  Plaintiffs' Request for Judicial Notice and Evidentiary Objections**

The McDermotts request the Court to take judicial notice of ten orders of remand by various district courts in California in Lemon law cases. (See RJN.) The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). Accordingly, the Court GRANTS the RJN.

The McDermotts also raise various objections to Paragraph 3 of the Sandhu Declaration. (See Pls.' Evid. Objs.) While the Court notes these objections, the Court does not rely on the objected to paragraph. Accordingly, these objections are OVERRULED AS MOOT.

**B.  Motion to Remand**

The McDermotts move to remand the action, arguing that FCA fails to show the amount in controversy meets the $75,000 minimum threshold. (See Mot.) The Court agrees.

   **1.  Complete Diversity**

The parties do not dispute that complete diversity of citizenship exists. Here, the McDermotts allege that they are residents of California. (Compl. ¶ 2.) They further allege that FCA "is a corporation organized and in existence under the laws of the State of Delaware," with its "principal place of business [ ] in the State of Michigan." (Id. ¶ 4.) Jeep, an alleged citizen of California, was no longer a defendant when FCA removed the action. (Id. ¶ 5; Notice of Removal ¶ 36.) Accordingly, there is complete diversity between the parties.

//
//
//
//

### 2. Amount in Controversy

The Court first finds the amount in controversy is not facially evident. The McDermotts allege damages and seek "restitution," "a civil penalty of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c)," "costs of the suit," "attorneys' fees," "punitive damages," and "prejudgment interest." (Compl. ¶¶ 13, 40, 50, 54, Prayer for Relief.) However, the only monetary value pleaded is "damages in a sum to be proven at trial in an amount that is not less than $25,001.00" in the body of the Complaint. (Id. ¶¶ 13, 39.) Because the $25,001 amount "is not repeated in the Prayer for Relief," the Complaint "fails to allege a sufficiently specific total amount in controversy." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007). Further, "it is unclear whether all [the] damages are subsumed within the request for $25,001." Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original). Accordingly, the Court "must determine if [FCA] ha[s] shown by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id.

#### a. Actual Damages

In the removal notice, FCA argues the Complaint meets the amount in controversy requirement because the sum of the purchase price of the vehicle and the civil penalty exceed $75,000. (NOR ¶¶ 28–30.) FCA submits the Retail Installment Sales Contract for the vehicle, which shows a sales price of $36,017.38, to be paid by a down payment of $1,140.00 and $34,877.38 "financed." ("Sales Contract," Lambert Decl., Ex. G.) FCA asserts that $36,017.38 constitutes the McDermotts' actual damages. (NOR ¶ 29; Opp'n at 3, 5.) This amount is also the relevant value because the McDermotts allege that they "seek … the entire contract price." (Opp'n at 5; Compl. ¶ 46.) Because two times the purchase price is $72,034.76, FCA contends that the amount in controversy is at least $108,052.14 in actual damages and civil penalties, even before the Court accounts for interest or attorneys' fees. (Lambert Decl. ¶¶ 14–19; Opp'n at 7.)

The McDermotts respond that FCA miscalculates their actual damages as the relevant value is actual payments made, not the vehicle purchase price. (Mot. at 8–9.) While FCA asserts that the contract's finance terms are irrelevant, the Court disagrees. (Opp'n at 5.) The vehicle purchase price can demonstrate actual damages under the Song-Beverly Act, particularly when a plaintiff seeks recovery of "the entire contract price." Schneider, 441 F. Supp. 3d at 914–15; see also Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages."). However, because the Song-Beverly Act also provides that "the actual price paid or payable by the buyer includes any finance charges," courts, including this one, have found the total cash price a more appropriate measure of actual damages. See Alvarado v. FCA US, LLC, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (applying "the total cash price paid for the subject vehicle"); Luna, 2021 WL 4893567, at *7 (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle").

Accordingly, the Court uses the total cash price in the Sales Contract of $35,583.63 as the starting point for the calculation of actual damages.[2]

The Court further agrees with the McDermotts that the total cash price must be reduced by a statutory mileage offset. (Mot. at 9.) Under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C).[3] The Sales Contract lists the odometer reading as twenty-four miles at the time of purchase. (See Sales Contract.) However, neither party submits records of vehicle repairs or any other evidence of the McDermotts' usage in order to calculate the mileage offset. In the absence of such evidence, the Court finds that FCA fails prove by a preponderance of the evidence the McDermotts' actual damages based on the purchase price of the vehicle. See Mullin v. FCA US, LLC, 2020 WL 2509081, at *3–4 (C.D. Cal. May 14, 2020) (finding the purchase price did not establish actual damages when "Defendants neglected to take the mileage offset into account"); c.f. Schneider, 441 F. Supp. 3d at 915 (considering the defendants' exhibit, which reflected the most recent repairs to the plaintiff's vehicle, when the complaint and its exhibits did "not indicate what the appropriate offset should be").

//
//
//

---

[2] The McDermotts also cite to Jackson v. Mercedes-Benz USA, LLC, 2020 WL 7090839, at *2 (C.D. Cal. Dec. 2, 2020), and Chajon v. Ford Motor Co., 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019), for the proposition that actual damages are limited to actual payments made. (Mot. at 8–9.) However, both cases rely on Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004 (N.D. Cal. 2002), which is distinguishable. Brady found that when a plaintiff seeks restitution under a leasing contract, "[l]imiting [the plaintiff's] recovery to payments actually made is consistent with the logic and purpose of the Song-Beverly Act to make the consumer whole." 243 F. Supp. at 1008. Because the instant case concerns a sale, rather than a lease, the Court determines that Brady and decisions that cite to Brady, as they relate to actual damages, hold limited relevance here.

[3] FCA argues that it need not consider a mileage offset when the purchase price and civil penalties exceed $75,000, and cites Brooks v. Ford Motor Co., 2020 WL 2731830, at *3–4 (C.D. Cal. May 26, 2020). However, Brooks did not reach the mileage offset, because the court found from the evidence that "it is more likely than not that even with those discounts, the amount in controversy would exceed $75,000." Id. at *4. Accordingly, FCA still holds the burden of proving that any mileage offsets would not reduce the McDermotts' damages below $75,000. Similarly, FCA's reliance on Garcia v. ACE Cash Express, Inc., 2014 WL 2468344, at *3 (C.D. Cal. May 30, 2014), is unavailing. Garcia was an employment case, in which the court held that a claim for offset "may not be considered as part of the amount in controversy." Id. at *3. At issue here is not a general claim for offset, but a statutory mileage offset required to calculate actual damages under the Song-Beverly Act.

### b. Civil Penalties

As noted above, FCA's amount in controversy calculation relies on the McDermotts' request for a civil penalty of up to twice the actual damages. (Compl. ¶¶ 40, 50, 54.) The Song-Beverly Act provides that a civil penalty of two times the amount of the actual damages is available pursuant to Sections 1794(c) and 1794(e) of the California Civil Code. Generally, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff." Saulic v. Symantec Corp., 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007). However, when a defendant "fail[s] to establish the amount of damages at issue," then "the Court cannot determine the amount of any potential civil penalty." Edwards v. Ford Motor Co., 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016). Here, FCA failed to satisfy its burden of proof to show actual damages. As such, FCA also fails to show that civil penalties contribute to the amount in controversy.[4]

### c. Attorneys' Fees

Finally, FCA argues that the McDermotts' request for attorneys' fees brings the amount in controversy to the jurisdictional minimum of $75,000. (Opp'n at 9; NOR ¶¶ 26–27.) "Section 1332(a)'s amount-in-controversy requirement … includes attorneys' fees." Guglielmino, 506 F.3d at 700; Galt G/S. v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). "The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." Schneider, 441 F. Supp. 3d at 914.

In Schneider, the court found insufficient the defendant's submission of a single declaration that "claims for attorneys' fees in these cases regularly approaches or exceeds $50,000." Id. Evidence of a recent fee award granted to the plaintiff's counsel was also inadequate. The defendants' claim "that the same counsel appears in each case and that the subject-matter of the cases are the same" failed "to provide the Court with specific evidence showing that the attorneys' fees in this case are 'more likely than not' to exceed $75,000." Id. (emphasis in original). Here, FCA submits the fee declaration of a former managing partner at

---

[4] FCA appears to include the McDermotts' requested relief of punitive damages in its calculation of the amount in controversy. (Opp'n at 3, 8.) Because "the Song-Beverly Act does not expressly provide for punitive damages," they are not part of the amount in controversy. Brady, 243 F. Supp. 2d at 1009; see also Edwards, 2016 WL 6583585, at *5 (finding that the plaintiff will not be able to "recover punitive damages" under the Song-Beverly Act). FCA cites to Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001), for the proposition that "[t]he amount in controversy calculation includes punitive damages." (NOR ¶ 25.) But the Gibson plaintiffs had a recoverable claim for punitive damages under California's Consumer Legal Remedies Act. 261 F.3d at 945–46. Moreover, Gibson relied on Bell v. Preferred Life Assurance Soc'y, which stated that punitive damages are relevant to the jurisdictional amount "[w]here … recoverable." 320 U.S. 238, 240 (1943). Here, punitive damages are not recoverable under the Song-Beverly Act. Accordingly, Gibson supports the Court's conclusion.

the same firm as counsel for the McDermotts in another Song-Beverly Act action, which requests an attorneys' fee award of $45,503.72. (Opp'n at 9; "Declaration of Payam Shahian," Dkt. No. 21-2.) FCA asserts that the McDermotts' counsel is likely to request a similar, if not greater, attorneys' fee award in the instant case, such that the amount in controversy will exceed $75,000. (Opp'n at 9–10.) Schneider deemed this kind of declaration insufficient. FCA provides no specific evidence of the attorneys' fees in this case. Accordingly, the Court concludes that attorneys' fees cannot be used to satisfy the amount in controversy requirement.

In sum, FCA fails to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. Accordingly, because the Court lacks subject matter jurisdiction over the Complaint, the Court GRANTS the Motion and DENIES FCA's request to conduct jurisdictional discovery.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion. The case is REMANDED to the Superior Court of California for the County of San Bernardino. The January 24, 2022 hearing is VACATED.

**IT IS SO ORDERED.**

---

[5] The Court declines to follow McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008), an out-of-circuit case that is not precedential. Notably, McPhail suggests that the appropriate forum for defendants to conduct jurisdictional discovery is in state court prior to removal. 529 F.3d at 954. The two other cases FCA cites to request jurisdictional discovery pertain to personal jurisdiction, not subject matter jurisdiction, and are inapposite. (Opp'n at 10.)